THEODORE J. HAHS, Respondent, v. CAPE GIRAR-
DEAU & CHESTER RAILROAD COMPANY
and THE CHESTER, PERRYVILLE & STE.
GENEVIEVE RAILWAY COMPANY, Appel-
lants.

St. Louis Court of Appeals, March 8, 1910.

1. **CONTRACTS: Receipts: Contradiction: Evidence.** While a
mere receipt is open to parol examination and modification,
where a writing contains a contract as well as a receipt, so much
of it as imports the contractual obligation may not be contra-
dicted or overthrown by parol testimony.

2. **RELEASES: Contradiction: Evidence.** Where the words "in
full release of all damages sustained March 31, 1906," were
written on a pay roll above plaintiff's signature, and plaintiff,
in consideration thereof, was paid a sum of money, such writ-
ing was not only a receipt but also a release of plaintiff's
right of action; and, in the absence of pleadings properly
repudiating its execution, it could not be contradicted by parol.

3. ———: **Situation of Parties: Evidence.** Parol evidence tend-
ing to advise the court of the situation of the parties at the
time a release for damages is executed and the circumstances
under which it was given is competent.

4. **CONTRACTS: Pleading: General Denial: What May be Shown
Under.** Generally speaking, in an action on a contract, under
a general denial it may be shown that no contract whatever
was made; but such may not be allowed when the contract
is one which is confessed as a matter of law by failure to
plead *non est factum* under oath.

5. **PLEADING: Instrument in Writing: What is, Under Statute.**
Where an injured person signed a pay roll and over his sig-
nature appeared the words, "in full release of all damages sus-
tained March 31, 1906," such writing constituted "an instru-
ment in writing" within the contemplation of section 746,
Revised Statutes 1899.

6. ———: ———: **Denial Under Oath: Effect of Failure.** Where
a release is pleaded in the answer, and a copy of same is filed
therewith, the failure of plaintiff to deny its execution under
oath, as provided by section 746, Revised Statutes 1899, amounts
to a confession by plaintiff of the manual execution of the
instrument, which includes both the act of signing and deliver-
ing it.

7. ———: ———: ———: ———: **Instrument Signed by Both Parties.** Section 746, Revised Statutes 1899, which provides that a written instrument pleaded shall be deemed confessed unless denied by a verified pleading of the opposite party, does not apply to instruments signed by both parties.

8. **APPELLATE PRACTICE: Reversal and Remand Rather than Outright Reversal: Requirements of Justice.** Where defendant pleads a release in the answer to the cause of action asserted in the petition and plaintiff does not in his reply deny under oath the execution of the release, although its execution was technically confessed, under the pleadings, the judgment will not be reversed outright, but will be reversed and the cause remanded in the interest of justice, it appearing from the proof that plaintiff has a meritorious cause of action and the aspect of the case presented being attributable to the erroneous ruling of the court on the question, when, had he ruled correctly, plaintiff might have avoided the predicament by amendment.

9. **RAILROADS: Leases: Liability of Lessor: Statutory Authority.** It is true as a general proposition that an incorporated railroad company may not lease its property and franchises to another and thus escape liability for injuries resulting from the operation of its road; but this rule does not obtain when the legislative authority has consented to the lease, without reserving the liability of the lessor by appropriate words to that effect.

10. ———: ———: ———: ———: **Lease to Foreign Company.** It is only where a domestic railroad company leases its road to a foreign corporation that section 1060, Revised Statutes 1899, continues a liability against the lessor for the negligence of the lessee in the operation of the property.

11. ———: ———: ———: ———: **Term "Lease" Construed.** The word "lease" as used in section 1060, Revised Statutes 1899, authorizing railroad leases, contemplates such an instrument as divests the lessor of possession and control and places the same in the lessee to the exclusion of the lessor, possessing all the qualities and incidents of a lease at common law between landlord and tenant.

12. **LANDLORD AND TENANT: Repairs: Landlord's Liability.** At common law, in the absence of a covenant in a lease, the landlord, having delivered the demised property in a sound state of repair, was neither liable to make repairs during the term nor entitled to enter the premises for that purpose.

13. **RAILROADS: Leases: Liability of Lessor: Defective Construction.** If a lessor railroad company's tracks were defective at the time the lease was executed, as a result of negligent con-

struction, and continue in that condition through the default of the lessee, liability for an injury resulting therefrom would not only attach to the lessee company, but would attach to the lessor company as well, on the theory such construction would be viewed by the law as a nuisance.

14. ——: ——: ——: **Facts Stated.** Where a domestic railroad company, in pursuance of section 1060, Revised Statutes 1899, leased its property to another domestic railroad company, its roadbed and track being sound and secure at the time the lease was executed, and the lessee allowed the track to get out of repair, the lessor was not liable for injuries sustained by an employee of the lessee as a result of the defect in the track.

Appeal from Cape Girardeau Circuit Court.—*Hon. Henry C. Riley*, Judge.

REVERSED AND REMANDED AS TO CHESTERVILLE, PERRY-VILLE AND STE. GENEVIEVE RAILWAY COMPANY.

REVERSED AS TO CAPE GIRARDEAU AND CHESTER RAILROAD COMPANY.

*Giboney Houck, R. G. Ranney* and *Benson C. Hardesty* for appellants.

(1)   The court erred in overruling the objection to the admission of any evidence and in overruling the motion for judgment on the pleadings, and in overruling the motion in arrest. A full release and quittance of plaintiff's cause stood confessed in the pleadings.   (a) A full release and quittance was pleaded and described in the answer and it stood confessed as it was pleaded and described. Sec. 746, R. S. 1899; Johnson v. Sov. Camp W. O. W., 119 Mo. App. 98; State to use v. Chamberlin, 54 Mo. 338; Love v. Life Ins. Co., 92 Mo. App. 192; Campbell v. Harrington, 93 Mo. App. 322; McGill v. Wallace, 22 Mo. App. 683; Bates v. Scheik, 47 Mo. App. 642.   (b)   Furthermore, the release itself showed on its face that it was a full quittance of the cause and a valid instrument within the scope and meaning of said section 746.   9 Cyc. 577, 579, 584, 585, 586; Donnell Mfg. Co. v. Repos, 75 Mo. App. 420; Bonnewell v. Nels

Jacobson, 5 L. R. A. (N. S.) 436 (Iowa); Monmouth Park Ass'n v. Wallace Iron Works, 19 L. R. A. 456; Ferry Company v. Railroad, 128 Mo. 224; Horn v. Hausen, 22 L. R. A. (Minn.) 617; Puff v. Puff, 104 S. W. (Ky.) 332; Rowland v. St. L. & S. F. R. R. Co., 124 Mo. App. 605; Squires v. Amherst, 145 Mass. 192; Tanner v. Merrill, 31 L. R. A. (Mich.) 171; Earle v. Berry, 1 L. R. A. (N. S.) 867; Indianapolis R. Co. v. Houlihan, 54 L. R. A. 737; Paris Mfg. Co. v. Carle, 92 S. W. 748; Railroad v. Craig, 98 S. W. 907. (c) No defense was pleaded to said release. Sec. 604, 607, 609 R. S. 1899; Kellerer v. Henderson, 203 Mo. 511; Richey v. Insurance Co., 98 Mo. App. 124; Smith v. Rembaugh, 21 Mo. App. 390; Johnson v. Sov. Camp W. O. W., 119 Mo. App. 98; Thomas v. Life Ins. Co., 73 Mo. App. 374; Wells v. Hobson, 91 Mo. App. 389; Merrill v. Trust Co., 46 Mo. App. 236; Saville v. Hoffstetter, 63 Mo. App. 273. (2) The court erred in admitting testimony as follows: (a) Testimony which tended to deny the execution of the release pleaded in the answer. (See point 7, Subdivision (1) and authorities cited thereunder); Smith v. Rembaugh, 21 Mo. App. 390. (b) Testimony tending to show that the release had been fraudulently procured. No fraud had been pleaded in the replication or elsewhere. (See point 7, Sub. Div. (2) and authorities cited thereunder); State ex rel. v. Stuart, 111 Mo. App. 498; Wojtylack v. Coal Co., 188 Mo. 293; Rowland v. Railroad, 124 Mo. App. 605; Kerr on Fraud and Mistake p. 365, sec. 8. No return or offer to return the consideration paid plaintiff for said release had been pleaded, nor had it been shown in evidence; the evidence showed the reverse. 18 Ency. Pl. and Pr., p. 829-835; Edwards v. Morris, 1 Ohio 524; Godding v. Decker, 3 Colo. App. 198; Reddish v. Smith, 10 Wash. 178; Robertson v. Fuller Constr. Co., 115 Mo. App. 465; Lomax v. Railroad, 119 Mo. App. 192; Althoff v. St. Louis Transit Company, 204 Mo. 166; McNealey v. Baldridge, 106 Mo. App. 11; Retzer v. Dodd P. Co., 58 Mo. App. 270; Och v. Rail-

road, 130 Mo. 27; Kingman-Moore I. Co. v. Ellis, (Mo.) 103 S. W. 127; Saulsbury v. Brown, P. B. & Co., (Ark.) 104 S. W. 257; Cobb v. Hatfield, 46 N. Y. 533; Ins. Co. of N. Y. v. Howard, 111 Ind. 544; Railroad v. Hayes, 83 Ga. 558; Gould v. Bank, 86 N. Y. 75.    (3)    As to defendant Cape Girardeau & Chester R. Co., said demurrer should have been sustained for the still further reason that the evidence showed plaintiff wes never in the service of said defendant.    Sec. 1060, R. S. 1899; Thomas v. Railroad, 101 U. S. 83; Miller v. Railroad, 125 N. Y. 123; 2 Wood on Railways, sec. 325, p. 1338; Hoff v. Railroad, 14 Fed. Rep. 558; Arrowsmith v. Railroad, 57 Fed. Rep. 165; Railroad v. Curl, 28 Kansas 622; Mahoney v. Railroad, 63 Me. 69; Nugent v. Railroad, 80 Me. 62; Markey v. Railroad, 185 Mo. 348; Moorshead v. United Ry. Co., 203 Mo. 121.    (4)    The petition fails to state a cause of action v. Cape Girardeau & Chester R. Company.    Plaintiff pushes himself out of court by alleging that both defendants are domestic corporations, and that Cape Girardeau & Chester R. Co., had leased the road to Chester, Perryville & Ste. Genevieve Ry. Co. and was not operating same, but that same was being operated by said Chester, Perryville & Ste. Genevieve Ry. Co.    See cases cited under sub. div. (3) of Point 3, supra) ; Hoffman v. McCracken, 168 Mo. 343; Megher v. Stewart, 6 Mo. App. 498.

*Edw. D. Hays* for respondent.

(1)    There was no verbal agreement that plaintiff would release defendants from liability for damages if replaced on the pay roll; nor was there any such written agreement embodied in the receipt signed at the time the $12.50 was paid.    The money was paid and received for another purpose.    It would have been unjust to deduct from plaintiff's damage claim the $12.50 paid for another purpose.  Instruction number eight was properly given.  R. S. 1899, sec. 654.  The receipt for time allow·

ed, not being a release, did not extinguish the pre-existing right to damages. Accord and satisfaction for time allowed does not bar recovery for damages. Plaintiff is not seeking to rescind any agreement actually made. 1 Cyc., p. 308; 19 Am. and Eng. Ency. Law (1 Ed.), 1113. (2) The court properly overruled motion for judgment on the pleadings; and properly overruled demurrer to the evidence; and properly gave instructions one, five and seven, for plaintiff. The only penalty for failing to plead *non est factum* is a confession of the "Instrument." R. S. 1899, sec. 746. Confession does not enlarge the vigor of the writing. A receipt, though expressed to be in full of all demands, has no contractual elements, but is open to parol explanation, and at most is but prima-facie evidence of the facts stated. It has no such sanctity as to make it conclusive if good reason appears for holding otherwise. Ireland v. Spickart, 95 Mo. App. 53; Aull v. Trust Co., 149 Mo. 1. Under a general denial the defending party may show that the instrument has been materially altered since delivery. 9 Cyc., pp. 734-735. (3) A release of one joint wrongdoer "Executed before trial" does not relieve the other joint wrongdoer unless such release is specially pleaded. The Cape Girardeau and Chester Railroad Company did not so plead. Release must be specifically pleaded by defendant seeking its benefit to avoid the plaintiff's right to controvert the same under general denial. 1 Cyc., pp. 341-346. (4) A lessor is liable for the acts of the lessee railroad. Instruction number four was properly given; defendants are wrong in their contention that a demurrer to the evidence should have been sustained on account of plaintiff being an employee of the lessee company; the general statutes fix this liability. R. S. 1899, sec. 1060; Brown v. Railroad, 27 Mo. App. 394; McCoy v. Railroad, 36 Mo. App. 445; Price v. Railroad, 70 Mo. App. 175; St. Clair v. Railroad, 70 Mo. App. 589; Markey v. Railroad, 185 Mo. 348; Dean v. Railroad, 199 Mo. 398. (5) Defendants cannot

shield themselves behind thir own fraud. The evidence is strongly conclusive that after the receipt was signed it was tampered with and interlined. Cottriell v. Krum, 100 Mo. 397; Judd v. Walker, 114 Mo. App. 128. The rule is now firmly established that any alteration of a paper without the consent of all parties vitiates the writing. 9 Cyc., p. 635; Morrison v. Garth, 78 Mo. 434; Higgins v. Harvester Co., 181 Mo. 300.

NORTONI, J.—This is a suit for damages accrued to the plaintiff through the alleged negligence of the defendants. Plaintiff recovered and both defendants appeal.

The defendants are domestic corporations, that is to say, they are each railroad companies incorporated and existing under the laws of this State. They own connecting lines of railroads in southeast Missouri. The defendant, Cape Girardeau & Chester R. R. Co., owned the railroad on which the plaintiff received his injury. It was being operated, however, at the time by the other defendant, The Chester, Perryville & Ste. Genevieve Ry. Co., in whose employ the plaintiff was engaged as a laborer on its section.

It is conceded throughout the case that the Chester, Perryville & Ste. Genevieve Ry. Co., lessee, was operating over the tracks of the Cape Girardeau & Chester R. R. Co., lessor, under a competent lease authorized by the statutes of the state, which in no manner reserved a liability against the lessor company for the torts of the lessee.

While the plaintiff was in the employ of the defendant, Chester, Perryville & Ste. Genevieve Ry Co., the lessee, as a section hand, he was injured through the derailment of a box car in which he and other section men were being transported by that company over the tracks of the other defendant, The Cape Girardeau & Chester R. R. Co., lessor. The plaintiff and his companions, in charge of their foreman, had been engaged

during the day in work extra of their regular employment, at a point on the railroad several miles distant from the section on which he was employed, and having finished the day's labor, was being transported homeward by his employer, the defendant, Cape Girardeau, Perryville & Ste. Genevieve Ry. Co., over a portion of the tracks owned by the other defendant, the lessor company. The men were all in an empty box car being propelled backwards by a locomotive engine owned by his employer, the lessee company. Upon approaching a trestle over a ravine on the road of the Cape Girardeau & Chester R. R. Co., the lessor, the box car was derailed because of a defect in the lessor's tracks adjacent to the trestle. As a result of the derailment, plaintiff was precipitated against the side of the car, which resulted in dislocating his shoulder and inflicting some other slight bruises. The particular negligence relied upon for a recovery relates to the defective track mentioned. The proof shows that the roadbed had settled considerably at the point where the railroad dump abuts the north end of the trestle and that within a space of about five feet the incline from the railroad dump to the end of the trestle was about fourteen inches. Besides, on one side of the track at this point, there was a joint in the rails, which appears to have been sunken more than the rail on the opposite side. The box car, moving at the rate of about eight miles an hour, upon reaching the point mentioned, was derailed because of the low joint and the sharp and extensive incline in the track adjacent to the trestle. There is no complaint whatever as to a defective car nor as to the mode or manner in which the car or locomotive was being operated. The charge of negligence relates solely to the defect in the track of the lessor, and it appears that the track had thus become defective while in the possession and under the control of the lessee. While the lease itself is not before us, there is nothing in the record indicating that the lessor company covenanted to maintain or repair

the tracks or roadway. All that appears as to this matter is to the effect that the lessee had been operating the road for a considerable period of time under the lease and that it had from time to time been making repairs on the leased road as though the obligation to do so rested upon it and not upon the lessor.

The defendants answered separately. Among other things, the Chester, Perryville & Ste. Genevieve Ry. Co., that is the lessee, or operating company, admitted the plaintiff's injury and pleaded an accord and satisfaction of the cause of action stated in the petition. In other words, it pleaded a full acquittance and release executed by the plaintiff in writing on the 19th day of May, 1906, wherein it is recited plaintiff accepted $12.50 from defendant and in consideration thereof executed a release on its pay roll of the cause of action sued on as follows: "In full release of all damages sustained March 31, 1906" and signed and delivered the same to the defendant by affixing his signature to line 16 of its pay roll opposite the words quoted. This defendant also filed the original page of its pay roll, relied upon, containing the release of the plaintiff's cause of action mentioned, which page and line 16 thereof evinced in writing that plaintiff had received on the date mentioned $12.50 "in full release of all damages sustained March 31, 1906, (Signed) Theodore Hahs." The defendant, Cape Girardeau & Chester R. R. Co., the lessor, answered by a general denial, specially denied that plaintiff was in the services at the time he was injured and pleaded further that it had long prior to that date leased its railroad to the other defendant, The Chester, Perryville & Ste. Genevieve Ry. Co., who was in full possession of and operating the same at the time plaintiff received his injury. To each of these answers the plaintiff filed a general denial only, without verification. The case coming on for trial, defendants objected to the introduction of any testimony by plaintiff for the reason the answer of the Chester, Perryville & Ste. Genevieve Ry.

Co. pleaded a full release and acquittance of the cause
of action, executed by plaintiff to it in consideration
of $12.50, which stood confessed in the case for the rea-
son plaintiff had failed to plead *non est factum* thereto
by denying the same under oath, as is required by our
statutes, section 746, Revised Statutes 1899, section 746,
An. St. 1906. The court overruled the objection and
expressed the opinion that the release pleaded in and
filed with the answer was not such an instrument in
writing as is contemplated by that statute, to which
ruling the defendants excepted. The same objection
and the same ruling were repeated upon several occa-
sions throughout the trial. Notwithstanding the fact
that the execution of the release pleaded in the answer
was not denied under oath by the plaintiff, the court
permitted evidence to be adduced tending to prove the
release mentioned was a forgery. Plaintiff himself
testified that the defendant paid him $12.50, as recited
in the pay roll, and that he had performed no labor at
the time for which he had not been paid. Over defend-
ants' exception, plaintiff said the defendant carried his
name on the pay roll as a cripple and paid him the
$12.50 as a donation during the time he was disabled;
that he signed the pay roll on the date mentioned and
received a check for the amount referred to as a gift.
He insists, however, that at the time of signing the pay
roll, the words of release therein appearing at the time
of the trial were not then present and says the words,
"In full release of all damages sustained March 31,
1906," were written opposite his signature at some time
after he signed the receipt. Several other witnesses,
who were present when the pay roll was signed by the
plaintiff and who signed a receipt on the same page
for their wages, said that they did not observe the words,
"In full release of all damages sustained March 31,
1906," opposite plaintiff's name at the time. Some of
these witnesses affixed their signatures to the pay roll
immediately before and some immediately after the

plaintiff. This testimony was all received over defendants' exception.

It appears, too, the words, "In full release of all damages sustained March 31, 1906," were written on the pay roll in small but legible letters in red ink and the fact that red ink was used is a circumstance likely to attract attention. One witness, besides the plaintiff, says positively that he looked over the pay roll at the time it was signed and knows the words of release in red ink were not then present.

It is argued by the plaintiff that the instrument relied upon as a release amounts only to a receipt and that as the penalty imposed by section 746, Revised Statutes 1899, for not denying its execution under oath is a confession of the instrument, he is not precluded thereby from contradicting the same by parole. The court proceeded on this theory and instructed the jury that although a receipt may, of itself, indicate a settlement, yet it is not conclusive evidence of such settlement but may be explained or rebutted by verbal testimony. The theory of the instruction is unsound in its application to the instrument in evidence, for it contains a contract as well as a receipt. It is very true that a mere receipt is not conclusive against an attack by parole. The law affords no special sanctity to a receipt as such. A receipt is merely the evidence of a fact and is, therefore, open to parole explanation and modification. [Aull v. St. Louis Trust Co., 149 Mo. 1, 17, 50 S. W. 289; Dawson v. Wombles, 111 Mo. App. 532, 86 S. W. 271; 23 Am. and Eng. Ency. Law (2 Ed.), 978, 979; 24 Am. and Eng. Ency. Law (2 Ed.) 283.] However this may be, the law affords immunity from parole attack to contractual obligations reduced to writing by the parties when supported by a sufficient consideration. And although a writing may be in part a receipt and as such disputable to that extent, if it contains a contract as well, so much of it as imports the contractual obligation may not be contradicted or overthrown by parole testimony. [Car-

penter v. Jamison, 6 Mo. App. 216; Carpenter v. Jamison, 75 Mo. 285; Randall v. Reynolds, 52 N. Y. (Supr. Ct.) 145; 24 Am. and Eng. Ency. Law (2 Ed.), 283; 23 Am. and Eng. Ency. Law (2 Ed.), 978; Davison v. Davis, 125 U. S. 90; Slatterly v. Bates, 8 Mo. App. 595.]

The writing relied upon as a release and confessed to have been executed by plaintiff, as it was, by the failure to deny its execution under oath in the reply, certainly amounts to more than a mere receipt for the $12.50, which the plaintiff conceded he received and for which he says he performed no labor. It contains besides an admission that he received that amount, a contractual stipulation to the effect that in consideration of its receipt he released the defendant from all damages accrued to him on account of the injury complained of in the petition. It reads, "In full release of all damages sustained March 31, 1906." The express words of release quoted import a contract whereby the defendant surrendered his right of action and under the state of the pleadings confessing its execution, this contract may not be contradicted by parole. [Squires v. Amherst, 145 Mass. 192; Randall v. Reynolds, 52 N. Y. (Supr. Ct.) 145; Carpenter v. Jamison, 6 Mo. App. 216; Carpenter v. Jamison, 75 Mo. 285; Rowland v. St. L. & S. F. R. R. Co., 124 Mo. App. 605, 102 S. W. 19; 24 Am. and Eng. Ency. Law (2 Ed.), 283, 284; 23 Am. and Eng. Ency. Law (2 Ed.), 979.] There was testimony introduced which tended to enlighten the court as to the situation of the parties at the time of the execution of the release and the circumstance under which it was given. From this it appears the plaintiff had performed no labor for the defendant for which he had not been paid theretofore; that his only claim against the defendant for damages sustained March 31, 1906, related to the cause of action stated in the petition. To this extent, and this extent only, the parole evidence, with respect

to the release, was competent under the state of the pleadings, as it tended to endue the court with the situation of the parties and the subject-matter to which the words employed in the writing related. All other testimony tending to contradict the contract contained in the release was incompetent and should have been rejected as the pleadings stood, for the law renders the instrument thus confessed immune from parole contradiction. [Kessler v. Clayes, 147 Mo. App. 88, 125 S. W. 799. Generally speaking it may be shown under the general denial that no contract whatever was made (1 Ency. Pl. and Pr. 818), but such certainly may not be allowed when the contract is one of those confessed as a matter of law by a failure to plead *non est factum* under oath.

Defendant having pleaded the release in its answer, as executed by the plaintiff, and filed a copy therewith, it is insisted the court should have directed a verdict for it on the theory that by failing to deny its execution under oath, the plaintiff confessed it as pleaded. We are entirely clear as to the proposition that the release pleaded in the answer as it was is an instrument in writing within the contemplation of our statute, section 746, Revised Statutes 1899, section 746, An. St. 1906. So much of that statute as is pertinent here is as follows:

"When any petition or other pleading shall be founded upon any instrument in writing, charged to have been executed by the other party and not alleged therein to be lost or destroyed, the execution of such instrument shall be adjudged confessed, unless the party charged to have executed the same deny the execution thereof, by answer or replication, verified by affidavit."

Although the plaintiff's replication amounted to a general denial, it was not verified by affidavit, as required by the statute. By omitting a verification by affidavit, the plaintiff confessed the execution of the instru-

ment pleaded, if it be one contemplated by the statute. The confession thus involved goes to the manual execution of the instrument only. By the later decisions of our Supreme Court, this includes a confession to the extent of both signing and delivering the instrument pleaded. [Hart v. Harrison Wire Co., 91 Mo. 414; see also Johnson v. Sovereign Camp of W., 119 Mo. App. 98, 95 S. W. 951; State to the use v. Chamberlin, 54 Mo. 338; Thomas v. Life Ass'n., 73 Mo. App. 371; Love v. Central Life Ins. Co., 92 Mo. App. 192; Campbell v. Harrington, 93 Mo. App. 315; Bates v. Scheik, 47 Mo. App. 642; McGill v. Wallace, 22 Mo. App. 675; Smith v. Rembaugh, 21 Mo. App. 390.]

As to the suggestion that the release pleaded is not an instrument in writing contemplated by the statute quoted, it may be said that it falls within the very words of the statutory provision, for it is clear that the defense pleaded in the answer is founded thereon. It is true the cases we have examined deal with instruments where affirmative relief has been sought thereon, and none seem to present the identical question where the instrument of writing such as a release is pleaded in bar as here. However, the statute above referred to is but the counterpart of another to be found in section 643, Revised Statutes 1899, An. St. 1906, section 643. That statute, so far as is material, is couched in the identical language as section 746, above quoted. It imposes the duty on the pleader of filing with his petition, or other pleading, the instrument of writing on which the cause of action or defense is founded in those cases wherein it is charged to have been executed by the other party. So far as is essential to show that section 746 is its counterpart, section 643 may be quoted as follows:

"When any petition, or other pleading, shall be founded upon any instrument of writing, charged to have been executed by the other party, . . . and not therein alleged to have been lost or destroyed the

same, . . . shall be filed with said petition or other pleading."

It will be observed so much of the statute just quoted is in identical language with the provisions of section 746, and it certainly imposes the duty upon the defendant in this case, relying upon the release in bar of the plaintiff's action, to file the same as it did with its answer, for so much of the answer as pleads the release in bar to the plaintiff's cause of action is founded on that instrument. It appears that the execution of any instrument of writing required to be filed with the pleading by section 643 as the foundation for the right therein asserted, should be treated as confessed under the provisions of section 746, if not denied under oath. Our Supreme Court has treated these statutes as relating to the same subject-matter and pointed out their similarity in Kelly v. Thuey, 143 Mo. 422, 45 S. W. 300. In that case the answer denying the instrument sued upon was unverified and the question was made as to whether or not its execution was for that reason confessed under the statute. The instrument involved was signed by both parties. The court pointed out that as it had been determined that section 643, requiring the instrument on which a pleading was founded to be filed therewith, did not apply to instruments signed by both parties, the same doctrine should obtain with respect to the confession imposed as a penalty for non-verification under section 746.

Although the execution of the release was technically confessed under the pleadings, we believe it would be highly unjust to reverse the judgment outright on that account without affording plaintiff an opportunity to amend. It appears from the proof that plaintiff has a meritorious cause of action and the aspect the case now presents on the state of the pleadings may be attributed to the ruling of the court when the question was raised at the inception of the trial, for had the court ruled otherwise, plaintiff might have avoided his present pre-

dicament by amendment. The evidence tending to prove the words of release were written in the pay roll after plaintiff signed it is clearly competent under the general denial, if properly amended and verified.

Moreover, it seems the voice of justice loudly calls for remanding the case instead of reversing the judgment outright and casting the plaintiff out of court without recompense for his injuries. We have, indeed, a precedent of high and controlling authority for the remand of a cause in the interest of justice when the harsh applications of the law points otherwise. In the Bank of Commerce v. Bogey, 44 Mo. 13, a demurrer was sustained to the petition and an appeal was had. The Supreme Court throughout the opinion reasoned the correctness of the action of the trial court in sustaining the demurrer and concluded by saying:

"Though we find no error in sustaining the demurrer, yet, that the issue may be raised as indicated, the judgment will be reversed at the costs of the appellant and the cause remanded."

That case, as this one, presented a situation disclosing that great injustice would result from conclusively casting the plaintiff for a mere erroneous conception of the theory of the law. See, also, Rowland v. St. L. & S. F. R. R. Co., 124 Mo. App. 605, 102 S. W. 19. Besides, the public policy of the state, as declared in sections 865 and 659, Revised Statutes 1899, An. St. 1906, section 865, 659 we believe, forbids the outright reversal of judgments in meritorious cases on a mere technical matter of procedure in no way affecting the merits of the action.

Aside from all other questions, it appears that there is no liability on the part of the Cape Girardeau & Chester R. R. Co., the lessor, for the injury inflicted upon the plaintiff through the negligence of the lessee. It is entirely true as a general proposition that an incorporated railroad company may not lease out its property and franchises to another and thus escape liability for

injuries resulting from the operation of its road. [Thomas v. R. R., 101 U. S. 71.] But this doctrine does not obtain when the legislative authority of the state has consented to the lease without reserving the liability of the lessor by appropriate words to that effect. [Mooreshead v. United Rys. Co., 119 Mo. App. 541, 96 S. W. 261; Moorshead v. United Rys. Co., 203 Mo. 121, 100 S. W. 611.] The two defendants being domestic corporations, owning connecting roads, both situate in the state, the legislative authority has expressly authorized the leasing of the one to the other without in any manner signifying an intention that the lessor company shall remain liable after the lease is executed for the torts of the lessee over which it has no control. [Sec. 1060, R. S. 1899.] It is only where a domestic railroad company leases its road to a foreign corporation of like kind that the statute referred to continues a liability against the lessor as though it continued to operate the property. This reservation of liability against the domestic company after leasing to a foreign corporation proceeds, we believe, on the theory that there shall remain a responsible party within the jurisdiction of the state to answer for such torts and defaults as may be committed in the operation of the road which the state has chartered. [Markey v. Louisiana, etc., R. R. Co., 185 Mo. 348, 84 S. W. 61; Smith v. Pac. R. R., 61 Mo. 17.] The reason for the rule of the statute in this respect does not obtain when both are domestic corporations owning railroads exclusively within the state. There can be no doubt that the authority conferred upon one domestic railroad to lease to another, under our statutes, without words expressive of a liability otherwise, confers authority to transfer, for the period of time stipulated, possession and control of the property to the lessee. The authority implied in the word, "lease," under such circumstances, authorizes such an instrument as divests the lessor of possession and control and places it in the lessee to the exclusion of the

lessor. The lease contemplated is an effective instrument possessing all of the qualities and incidents with which a lease is invested at common law between landlord and tenant. So much has been conclusively determined by both this court and the Supreme Court in Moorshead v. United Rys. Co., 119 Mo. App. 541, 96 S. W. 261; Moorshead v. United Rys. Co., 203 Mo. 121, 100 S. W. 611. See Elliott on Railroads, sec. 469. It is certain that at common law if the landlord executed a lease to a tenant and delivered the possession of the property demised in a sound state of repair, he performed the full measure of his obligation and was not responsible for injuries to third persons which thereafter accrued through the negligence of the lessee, either in the management of the premises or in permitting them to become out of repair. [Taylor on Landlord and Tenant (9 Ed.), sec. 175.] Indeed, not only is there no obligation on the part of the lessor at common law to repair the leased premises while in the possession of the lessee unless assumed by a covenant to that effect, but on the contrary the lessor is not permitted to enter the premises for the purpose of repair except by reservation of authority to do so. The common law has always thrown the burden of repairs upon the lessee as being in fact a bailee of the premises and bound to restore the same as he received them. [Taylor on Landlord and Tenant, secs. 174, 175, 327, 328; Ward v. Fagin, 101 Mo. 669, 14 S. W. 738; Gordon v. Peltzer, 56 Mo. App. 599; Herdt v. Koenig, 137 Mo. App. 589, 119 S. W. 56.] The doctrine mentioned obtains with full force as between one railroad company as lessor and another as lessee when the lease is expressly authorized by the statute and unincumbered with reservations or statutory duty imposed to the contrary. [Moorshead v. United Rys. Co., 119 Mo. App. 541, 96 S. W. 261; Moorshead v. United Rys. Co., 203 Mo. 121, 100 S. W. 611; Caruthers v. Kansas City, etc., R. R. Co., 44 L. R. A. 737 and instructive note.] It is true the Moorshead case presented a

question of the liability of the lessor company for the tort of the lessee committed through its agent in operating the car.   However that may be, there is no distinction in principle between the question in judgment there and the one presented here, for while the plaintiff's injury in this case resulted from the defective roadbed of the lessor, the defect was one which the law cast the duty upon the lessee to mend.   It is suggested that as the defect complained of existed in the track of the lessor, that company is liable to respond as well for the plaintiff's hurt, because the law annexes to its franchise the duty to exercise care in respect of its roadbed, and there can be no doubt that such is its obligation at common law.   But the suggestion omits entirely to reckon with the fact that the competent legislative authority has authorized it to farm out its tracks to another and thus assume a relation to the property which as a matter of law precludes its right to either enter upon or repair the same while in possession of the lessee.   The argument would inhere with much force if it appeared that the defect was one which existed in the track at the time the lease was executed and the possession given over to the lessee, for in such circumstances, the law would view it as a nuisance and treat it accordingly to the end that both the lessor, who had created the nuisance, and the lessee, who had continued the same, should respond for its baneful effect upon an innocent third party.   [Taylor on Landlord and Tenant (9 Ed.), sec. 175; Gordon v. Peltzer, 56 Mo. App. 599; Tate v. M. K. & T. R. R. Co., 64 Mo. 149, 155; Mancuso v. Kansas City, 74 Mo. App. 138.] And so it is if the lessor's tracks were defective in the manner disclosed by the evidence as a result of negligent construction, at the time the lease was executed, and continued in that condition through the default of the lessee, liability would not only attach to the lessee company but continue as well against the lessor for such negligent construction on the principle of nuisance referred

to. The following authorities are in point: Arrowsmith v. Nashville & D. R. R. Co., 57 Fed. 165; Nugent v. Boston, etc., R. R. Co., 80 Me. 62; see, also, St. Louis, etc., R. R. Co. v. Curl, 28 Kan. 633; Miller v. N. Y., etc., R. R. Co., 125 N. Y. 118; Moorshead v. United Rys. Co., 119 Mo. App. 541, 96 S. W. 261; Moorshead v. United Rys. Co., 203 Mo. 121, 100 S. W. 611; Elliott on Railroads (2 Ed.), sec. 469.

There is naught in the case tending to show that the lessor company covenanted to repair the tracks. It appears its roadbed and track were sound and secure at the time the lease was executed and that the lessee had been operating under the lease for a considerable period. The lessee company had undertaken to repair the defective track at the place mentioned only about three days before the plaintiff received his injuries but performed the work in such a careless manner the embankment gave way a second time and resulted in the derailment of the car in which plaintiff was riding. Under these circumstances, it appears conclusively that no liability may be asserted against the lessor for the negligence of the lessee in failing to perform its duty in the premises. The relation of lessor and lessee not only affixed the obligation upon the lessee to exercise care in maintaining the tracks but precluded the lessor as well from any right to enter upon the premises for the purposes of repair.

The judgment will be reversed as to the Cape Girardeau & Chester R. R. Co., the lessor, and that defendant discharged. As to the defendant, The Chester, Perryville & Ste. Genevieve Ry. Co., the lessee, the judgment will be reversed and the cause remanded. It is so ordered. All concur.